UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

CAMERON WILLIAM NOEL,

        Petitioner,               Case No. 1:21-cv-256

v.                                        Honorable Paul L. Maloney

ROBERT VASHAW,

        Respondent.
_____/

## **OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Discussion**

I. **Factual allegations**

Petitioner Cameron William Noel is incarcerated with the Michigan Department of Corrections at the St. Louis Correctional Facility (SLF) in St. Louis, Gratiot County, Michigan. On November 5, 2018, Petitioner pleaded guilty in the Kent County Circuit Court to first-degree criminal sexual conduct (CSC-I). On December 6, 2018, the court sentenced Petitioner to a prison term of 25 to 80 years.

The Advisory Committee Notes to Rule 4 provide that the Court's preliminary review of a petition "may properly encompass any exhibits attached to the petition, including but not limited to, transcripts, sentencing records, and copies of state court opinions." If such items are not included with the petition, "the judge may order any of these items for [her] consideration." Advisory Committee Notes to Rule 4 (1976 Adoption). Moreover, a court is permitted to "take judicial notice of facts contained in state court documents pertaining to [a petitioner]'s prior conviction so long as those facts can be accurately and readily determined." *United States v. Davy*, 713 F. App'x 439, 444 (6th Cir. 2017) (citing *United States v. Ferguson*, 681 F.3d 826, 834–35 (6th Cir. 2012)).

Petitioner provides no details regarding the events that prompted his prosecution; but he provides many of the documents from his state court prosecution, including his application for leave to appeal to the Michigan Court of Appeals (ECF No. 1-2), the Michigan Supreme Court's order denying leave to appeal (ECF No. 1-3), the judgment of sentence (ECF No. 1-4), the felony information (ECF No. 1-5), Petitioner's affidavit (ECF No. 1-6), the signed Advice of Rights form, including counsel's handwritten notes regarding the plea offer (ECF No. 1-7), the plea hearing transcript (ECF No. 1-8), the motion to withdraw plea hearing transcript (ECF No. 1-9), and the sentencing hearing transcript (ECF No. 1-10). To fill any gaps, the Court has relied on

2

other sources of information. The Court has reviewed the Kent County Circuit Court file for Petitioner's prosecution, Case No. 18-08809-FC, as well as the materials from Petitioner's appeals that were made publicly available by the Michigan appellate courts.

At the sentencing, Kent County Circuit Court Judge Mark Trusock described Petitioner's offense conduct as follows:

> You were married to the mother of this victim. You violated this young lady between her ages of 8 and 12. You literally violated her a hundred or more times, almost on a weekly basis with penetration.

(Sentencing Hr'g Tr., ECF No. 1-10, PageID.77.) Based on that conduct, Petitioner was charged with one count of CSC-I, for digital/vaginal penetration, and one count of second-degree criminal sexual conduct (CSC-II) for sexual contact. (Felony Information, ECF No. 1-5, PageID.49.)

The CSC-I charge carried a potential sentence of life imprisonment and a statutory mandatory minimum sentence of 25 years. (*Id.*) The severity of those penalties informed the defense strategy, which Petitioner describes as "to try to secure a plea agreement to Count 2, CSC-2nd Degree which was punishable by no more than 15 years rather than Count 1, CSC-1st Degree, which was punishable by life or any term of years but at least 25 years." (Pet'r's Br., ECF No. 1-1, PageID.6.) Petitioner avers that he discussed that specific strategy with counsel the day before he entered his plea. (Pet'r's Affid., ECF No. 1-6, PageID.51.)

The next day—the day of a scheduled status conference—Petitioner's counsel and the prosecutor discussed plea terms while Petitioner waited in the holding area. (*Id.*) One of the deputies visited Petitioner in the holding area with the Advice of Rights from, informing Petitioner that his counsel had asked that Petitioner sign the document. (*Id.*, PageID.51–52.) The form listed the rights that Petitioner would be giving up if he entered a guilty plea; it also included a handwritten note from counsel regarding the plea terms: "A/C to CSC 1st w/ 25 year mandatory

3

min. Dismiss CSC 2nd." (ECF No. 1-7, PageID.54.) Petitioner signed the paper. (Pet'r's Affid., ECF No. 1-6, PageID.52.)

Petitioner was then called into the courtroom. He entered his plea. During the plea hearing, Petitioner was informed that the plea agreement called for him to plead guilty to Count 1, CSC-I, with a maximum penalty of life or any term of years. (Plea Hr'g Tr., ECF No. 1-8, PageID.58–59.) Petitioner acknowledged that he had read and signed the Advice of Rights form and that he was willing to waive those rights. (*Id.*, PageID.59.) He also acknowledged that he would be giving up "any claim that this plea was the result of any promises or threats that were not disclosed to the Court at [the plea] hearing . . . ." (*Id.*) The prosecutor described the plea agreement, including the term that Count 1 included "a mandatory minimum of 25 years . . . ." (*Id.*, PageID.59–60.) Petitioner's counsel agreed that the agreement was as described by the prosecutor and that he had communicated those terms to Petitioner. (*Id.*, PageID.60.) Judge Trusock then asked Petitioner if that was the complete plea agreement, including "a mandatory 25-year sentence." (*Id.*) Petitioner acknowledged that was the agreement and that there were no other promises or threats and that he had no questions regarding the plea. (*Id.*) Petitioner then admitted to committing the offense conduct in Kent County during the time frame identified in the felony information.

A presentence investigation report was prepared. The scoring of the guidelines called for a minimum sentence in the range of 108 to 180 months; but the minimum sentence required by statute was 25 years. Judge Trusock sentenced Petitioner to 25 to 80 years' imprisonment. (Sentencing Hr'g Tr., ECF No. 1-10, PageID.76–77.)

The court appointed appellate counsel for Petitioner. At Petitioner's request, counsel filed a motion to withdraw plea. The motion was ultimately handled by retained counsel

4

who substituted in for appointed counsel. Petitioner contended that he was very unfamiliar with criminal proceedings and that, when he entered his plea, he did not understand that he could not argue for or obtain a minimum sentence lower than 25 years. (Pet'r's Affid., ECF No. 1-6, PageID.52.) Judge Trusock reviewed the record and concluded that Petitioner's motion to withdraw his plea was "frivolous." (Mot. Hr'g Tr., ECF No. 1-9, PageID.69.)

Petitioner sought leave to appeal the trial court's determination in the Michigan Court of Appeals and then the Michigan Supreme Court. Although Petitioner indicated that his plea was "unknowing" in the Michigan appellate courts, the focus of his argument was that the plea was "unknowing" because the trial judge had failed to fulfill his obligations to conduct a proper plea colloquy under the state court rules and that, therefore, the court should have permitted Petitioner to withdraw his plea. By order entered September 9, 2018, the court of appeals denied leave to appeal "for lack of merit in the grounds presented." *People v. Noel*, No. 350005 (Mich. Ct. App., Sept. 9, 2018). By order entered March 27, 2020, the Michigan Supreme Court denied leave to appeal as well. (Mich. Order, ECF No. 1-3, PageID.45.)

On March 19, 2021, Petitioner timely filed his habeas corpus petition raising one ground for relief, as follows:

I. [Petitioner's] guilty plea was not made knowingly.

(Pet., ECF No. 1, PageID.2.)

**II.  AEDPA standard**

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to,

5

or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being

6

presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court

can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

**III. Discussion**

Petitioner claims that his plea was not voluntary and intelligent. *See Mabry v. Johnson*, 467 U.S. 504, 508 (1984) ("It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked."). The test for determining a guilty plea's validity is "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Hill v. Lockhart,* 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). Courts assessing whether a defendant's plea is valid look to "all of the relevant circumstances surrounding it[.]" *Brady v. United States*, 397 U.S. 742, 749 (1970).

In order to find a guilty plea constitutionally valid, several requirements must be met. The defendant pleading guilty must be competent, *see Brady*, 397 U.S. at 756, and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). Petitioner does not claim that he was incompetent or that he did not understand the nature of the charges he faced.

The plea must also be voluntary in the sense that it is not the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered unable to weigh rationally his options

8

with the help of counsel. *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). Petitioner does not claim he was coerced into his plea decision.

The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted). Finally, the defendant must have available the advice of competent counsel. *Tollett v. Henderson*, 411 U.S. 258, 267-68 (1973); *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970). The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made. *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel). Ineffective assistance of counsel will render a plea of guilty involuntary. *See Hill*, 474 U.S. at 56-57.

Petitioner's challenge to the voluntariness of his plea is based on his claim that he did not know the consequences of the plea—that his minimum sentence would not fall below 25 years. In the state appellate courts, Petitioner focused his claim on the trial judge's alleged failures to satisfy his obligations under Michigan Court Rule 6.302(B)(2), which requires that the court advise the defendant, and determine that the defendant understands, "the maximum possible sentence for the offense and any mandatory minimums sentence required by law . . . ." Mich. Ct.

R. 6.302(B)(2).  Because of that error, Petitioner contends, that he should have been permitted to withdraw his plea under Michigan Court Rule 6.310(C).

Although these state court rules are intended to give effect to the constitutional requirement that a plea be voluntary and knowing, the state requirements themselves are not mandated by the constitution.  The only constitutional challenge that a habeas court may entertain with regard to a plea of guilty is that the plea was not entered in a knowing and voluntary fashion under the standards set forth in *Boykin v. Alabama*, 395 U.S. 238 (1969).  A habeas court is restricted to these federal principles, and may not grant habeas relief on the basis of state law governing the taking or withdrawal of guilty pleas.  *Riggins v. McMackin*, 935 F.2d 790, 794–95 (6th Cir. 1991).  A state defendant has no constitutionally guaranteed right to withdraw a guilty plea.  *See Carwile v. Smith*, 874 F.2d 382 (6th Cir. 1989).  Consequently, the questions whether the trial court satisfied the requirements of the Michigan Court Rules regarding the taking of Petitioner's plea or whether Petitioner should have been allowed in the court's discretion to withdraw his guilty plea are not reviewable in habeas corpus.

When a state defendant brings a federal habeas petition challenging the voluntariness of his plea, the state generally satisfies its burden of showing a voluntary and intelligent plea by producing a transcript of the state-court proceeding.  *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993); *see also McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *Garcia*, 991 F.3d at 326).  Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact and to the judgment itself.  *Garcia,* 991 F.2d at 326.  A satisfactory state-court transcript, containing findings after a proper plea colloquy, places upon petitioner a "heavy burden" to overturn the state findings.  *Id.* at 328; *see also Parke v. Raley*, 506 U.S. 20, 29 (1992) (holding that the factual findings of

10

voluntariness made by the state court are entitled to a presumption of correctness); *Blackledge v. Allison*, 431 U.S. 63, 73 (1977) (a solemn plea of guilty presents a "formidable barrier" to a subsequent claim to the contrary).

Under settled Sixth Circuit authority, a petitioner's responses to the trial judge, given under oath at the plea hearing, preclude a later assertion that he was unaware of the consequences of his plea or that there was a specific sentence agreement as part of his plea bargain. In *Baker v. United States*, 781 F.2d 85 (6th Cir. 1986), the trial court inquired concerning the terms of any plea bargain, received a response from the prosecutor on the record, and received denials from defense counsel, the prosecutor, and the defendant concerning the existence of any other terms. The Sixth Circuit held that where the trial court has scrupulously followed the required procedure, "the defendant is bound by his statements in response to that court's inquiry." 781 F.2d at 90 (quoting *Moore v. Estelle*, 526 F.2d 690, 696–97 (5th Cir. 1976)).

The court again addressed this issue in *United States v. Todaro*, 982 F.2d 1025 (6th Cir. 1993), also a § 2255 case. In *Todaro*, the defendant attempted to attack his guilty plea, claiming that his attorney had promised him that he would be sentenced to probation if he pled guilty. The defendant had testified at the plea colloquy, however, that no other promises had been made to him, other than those stated in the plea agreement. 982 F.2d at 1026. Consequently, the Sixth Circuit was again faced with a situation in which a defendant's post-conviction allegations were directly contrary to his statements at the plea hearing. Relying on *Baker*, the court reiterated its earlier holding, under which a defendant is bound by his statements in response to the trial court's inquiry, where there has been a careful plea colloquy.

Petitioner's claims that he was unaware that he could not receive a minimum prison sentence that fell below 25 years, and would not have entered a plea if he had known he could not

receive a minimum prison sentence of less than 25 years, are directly contrary to his admissions during the plea hearing. Based on Petitioner's affidavit testimony, he carried on with a subjective misunderstanding regarding the possibility of a minimum sentence less then 25 years despite the charging documents, his defense strategy going into plea negotiations, his counsel's description of the plea terms, the prosecutor's description of the plea terms, and the court's description of the plea terms to the contrary. Petitioner's determination to blissfully ignore everything he was told regarding the consequences of his plea does not render his plea unknowing or involuntary. The words "mandatory minimum sentence of 25 years" are straightforward. The interpretation of the significance of those words does not require any special familiarity with criminal procedure. Judge Trusock's characterization of Petitioner's position as frivolous was well-deserved.

Petitioner has failed to show that the state appellate court's rejection of his claim as meritless is factually unreasonable on the record or that the state court's determination of his claim is contrary to, or an unreasonable application of, clearly established federal law. Accordingly, he is not entitled to habeas relief.

## IV.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, for the same reasons Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court concludes that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.


Dated:   March 31, 2021                              /s/ Paul L. Maloney
                                                    Paul L. Maloney
                                                    United States District Judge